UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PATRICIA P.,

          Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Case No. C20-5230-MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income. Plaintiff contends the administrative law judge ("ALJ") erred by failing to incorporate limitations from two medical opinions he accepted, and by rejecting two medical opinions and Plaintiff's testimony. (Dkt. # 32.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II.    BACKGROUND

Plaintiff was born in 1977, has a limited education, and has no past relevant work. AR at 408. She was last gainfully employed in 2007. *Id.* at 430-31. Plaintiff was awarded benefits in

ORDER - 1

1  2012 because her depressive disorder met the criteria of a listed impairment. *Id.* at 483. Benefits

2  ceased when Plaintiff went to prison. *Id.* at 398.

3  Plaintiff applied again for benefits in December 2016, alleging disability as of August 24,

4  2010. AR at 398. Plaintiff's applications were denied initially and on reconsideration, and

5  Plaintiff requested a hearing. *Id.* at 487, 498, 525-26. After the ALJ conducted a hearing in

6  September 2018, the ALJ issued a decision finding Plaintiff not disabled since her December

7  2016 application date. *Id.* at 415-76, 398-409. In pertinent part, at step two of the five-step

8  disability determination[1] the ALJ found Plaintiff had the severe impairments of major depressive

9  disorder with psychotic features, posttraumatic stress disorder, generalized anxiety disorder, and

10 personality disorder. *Id.* at 400. She was limited to simple, routine work with few changes, no

11 fast-paced environment, no public interaction and occasional coworker interaction. *Id.* at 403.

12 With this Residual Functional Capacity ("RFC"), at step five the ALJ found Plaintiff could

13 perform jobs such as hand packager, marker, and garment sorter. *Id.* at 408.

14 As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the

15 Commissioner's final decision. AR at 1-4. Plaintiff appealed the final decision of the

16 Commissioner to this Court. (Dkt. # 1.)

### III.   LEGAL STANDARDS

18 Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

19 security benefits when the ALJ's findings are based on legal error or not supported by substantial

20 evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a

21 general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the

22 ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

---

[1] *See* 20 C.F.R. § 416.920.

ORDER - 2

(cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Erred by Failing to Include Limitations Opined by State Agency Reviewing Doctors Rita Flanagan, Ph.D., and Eugene Kester, M.D.

In evaluating a medical opinion, an ALJ must either accept the opinion and incorporate its limitations into the RFC or explain why the opinion was rejected. SSR 96-8p, 1996 WL 374184, at *7 (Jul. 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). Dr. Flanagan and Dr. Kester opined Plaintiff was only capable of "superficial interaction with supervisors and a limited number of coworkers…." AR at 495, 511. The ALJ gave their opinions "significant weight" because they were consistent with the medical evidence and Plaintiff's demonstrated functioning. *Id.* at 405. The ALJ restricted Plaintiff to "occasionally interact[ing] with co-workers." *Id.* at 403. However, the ALJ failed to include in the RFC any limitation on the number of coworkers or on interactions with supervisors. The Commissioner argues the "ALJ

ORDER - 3

reasonably construed a vague term, … 'limited,' as meaning only occasional contact." (Dkt. # 33 at 9.) But in the doctors' opinions "limited" refers to the number of coworkers, not the level of contact with them, which is restricted to "superficial." In the RFC, in contrast, the number of coworkers is unlimited. The ALJ erred by failing to include all of Dr. Flanagan's and Dr. Kester's opined limitations in the RFC.

The Commissioner argues the error is harmless because, in the jobs the ALJ relied on at step five, the level of interpersonal interaction required is "[n]ot [s]ignificant" and a requirement for talking is "[n]ot [p]resent." (Dkt. # 33 at 10.) "Not significant" is sufficiently similar to "superficial" to show the ALJ's error in failing to restrict supervisor and coworker contact to a superficial level was harmless. However, the level of interaction is distinct from the number of people with whom Plaintiff would be required to interact. Dr. Flanagan's and Dr. Kester's opinions prohibit interaction, however minimal, with dozens or hundreds of coworkers. The record does not reveal how many coworkers Plaintiff would have in the jobs the ALJ relied on at step five. At step five, it is the Commissioner who bears the burden to show that a claimant is not disabled because she can perform work that exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2). It is thus the Commissioner's burden to show the jobs identified are consistent with Plaintiff's RFC. The Commissioner has not met that burden.

The Court concludes the ALJ harmfully erred by excluding Dr. Flanagan's and Dr. Kester's limitation on the number of coworkers with whom Plaintiff can interact.

\\

\\

ORDER - 4

### B.  The ALJ Did Not Err by Discounting Other Medical Opinions

*1.  The ALJ Did Not Err by Discounting the Opinions of Examining Doctor Kimberly Wheeler, Ph.D.*

Dr. Wheeler opined Plaintiff was unable to maintain punctual attendance, communicate and perform effectively, and complete a normal work day and work week, and was markedly limited in her ability to adapt to changes, request assistance, and plan realistically. AR at 1200. The ALJ could only reject these opinions for "specific and legitimate" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). The ALJ gave Dr. Wheeler's opinions little weight as inconsistent with objective treatment notes and Plaintiff's activities of daily living. AR at 407.[2]

The ALJ found notes "made pursuant to actual treatment" were more persuasive than Dr. Wheeler's observations from a "one time exam," in part because Plaintiff's "limited effort in a consultative exam supports a finding that more weight should be given to mental status findings in the claimant's treatment notes." AR at 407. The parties dispute whether Dr. Wheeler's observations actually indicated limited effort, or rather Plaintiff's extreme anxiety at the examination. Regardless, the ALJ permissibly gave more weight to repeated consistent observations throughout the record than to one-time observations. *Cf. Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (specific and legitimate reasons for rejecting examining doctor's opinion include inconsistency with objective evidence in the medical record as a whole).

Plaintiff contends some of the cited treatment notes, containing only brief observations that Plaintiff was "[c]ooperative" with "normal," "calm," or "[a]ppropriate" mood and affect in the context of physical examinations, provided insufficient reason to discount Dr. Wheeler's

---

[2] The ALJ also noted Dr. Wheeler performed a "one time exam," but the Commissioner acknowledges this is insufficient, alone, to discount a medical opinion. AR at 407; (Dkt. # 33 at 14).

ORDER - 5

more in-depth examination. *See, e.g.*, AR at 1066, 770, 828, 831. However, even notes from appointments specifically for mental health treatment contain largely normal findings. During therapy appointments, mental status examination results were entirely normal except for mood or affect. Even mood and affect were normal in a substantial proportion of the appointments. *Compare id.* at 746, 799, 801, 806 (all note "calm" mood); 810 ("good" mood); 903 ("doing better"); 906 ("fine") *with id.* at 797 (anxious, irritable, sad), 803 (anxious), 808 (anxious, flat, guarded), 810 (anxious, flat affect), 814 (blunted, flat affect), 818 (affect blunted, anxious), 910 ("up and down"), 914 ("moody"). Dr. Wheeler observed "[i]ntensely anxious, dysphoric" mood, which was directly inconsistent with the repeated observations of Plaintiff's treating providers of normal or mildly abnormal mood. *Id.* at 1201.

Plaintiff contends "the Ninth Circuit has expressed a general preference for interpretive opinions over raw data to establish facts." (Dkt. # 34 at 5.) While doctors' opinions are valued for their expertise at interpreting raw data, here the ALJ discounted Dr. Wheeler's opinions as based on raw data that was likely inaccurate, as evidenced by conflict with the longitudinal treatment record. This was a specific and legitimate reason to discount Dr. Wheeler's opinions.

The Court need not address the ALJ's additional reason of conflict with Plaintiff's activities because, even if erroneous, its inclusion was harmless. *See Molina*, 674 F.3d at 1117 (error harmless if "inconsequential to the ultimate disability determination"); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1163 (9th Cir. 2008) (inclusion of erroneous reasons harmless because "remaining valid reasons supporting the ALJ's determination are not 'relatively minor'"). The Court concludes the ALJ did not err by discounting Dr. Wheeler's opinions.

    2. *The ALJ Did Not Err by Discounting the Opinions of Non-examining Doctor Phyllis N. Sanchez, Ph.D.*

In December 2016, Dr. Sanchez reviewed a summary of Plaintiff's records and opined she had marked limitations in adapting to changes, communicating and performing effectively, maintaining appropriate behavior, completing a normal work day and work week, and planning realistically. AR at 715. An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). The ALJ gave little weight to Dr. Sanchez's opinions as inconsistent with the same medical evidence as for Dr. Wheeler's opinions. AR at 406. The almost entirely normal mental status examination findings throughout the medical record provided a sufficient reason to discount Dr. Sanchez's opinions.

The Court need not address the ALJ's additional reasons, improvement with treatment and conflict with Plaintiff's activities, because any error is harmless. The Court concludes the ALJ did not err by discounting Dr. Sanchez's opinions.

  **C.** **The ALJ Erred by Discounting Plaintiff's Testimony**

Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).

The ALJ discounted Plaintiff's testimony that anxiety prevents her from working as inconsistent with the medical evidence, her activities, and improvement with treatment. AR at 405.

    *1.*  *Conflict with Medical Evidence*

The ALJ discounted Plaintiff's testimony because generally normal psychiatric findings were "inconsistent with the severity of symptoms alleged." AR at 405. However, once Plaintiff established her impairments could cause the symptoms alleged, "lack of medical evidence cannot form the sole basis" for rejecting testimony as to symptom severity. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The Commissioner contends the medical evidence not only failed to support, but contradicted, Plaintiff's testimony. (Dkt. # 33 at 6-7.) "Contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective testimony." *Carmickle*, 533 F.3d at 1161. However, the Commissioner fails to identify a genuine contradiction. The Commissioner points to normal memory findings and mild or occasionally normal concentration findings, but fails to consider Plaintiff's reports of forgetfulness and distractibility may be caused indirectly by anxiety rather than directly by cognitive deficits. The Commissioner points to a calm, pleasant, cooperative demeanor with doctors, but this does not contradict Plaintiff's testimony of internal anxiety.

Conflict with the medical evidence was not a clear and convincing reason to discount Plaintiff's testimony.

    *2.*  *Activities*

An ALJ may discount a claimant's testimony based on daily activities that contradict her testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). "Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ cited activities of preparing her own meals, handling personal care, taking public transportation,

spending time with her family and one friend, handling her finances, and doing some household cleaning. AR at 405. The ALJ failed to explain how these activities contradict any of her testimony, such as panic attacks, racing thoughts, distraction, lack of energy, or difficulty being around people. *See id.* at 452-53, 457-58, 464-66, 623, 628, 655. Plaintiff reported she only makes frozen dinners, peanut butter sandwiches, and cereal, none of which require substantial concentration. *Id.* at 625, 652. She only reported "clean[ing] after [her]self" and only for 30 minutes to an hour. *Id*. Being around family members and one friend was not a clear and convincing reason to discount testimony of difficulty being around other people. The Commissioner contends that, at step three, the ALJ found using public transportation, attending church, and interacting during her hearing before the ALJ contradicted Plaintiff's testimony of difficulty leaving the house. (Dkt. # 33 at 5.) Neither attending a one-time hearing, nor Plaintiff's extremely minimal activities of going once or twice a week to medical appointments, church, or the store for basic hygiene and food necessities, contradicts Plaintiff's testimony. *See* AR at 626-27, 653-54. She did not testify that she is wholly unable to leave the house.

      The Commissioner contends Plaintiff's activities were analogous to those in *Stubbs-Danielson v. Astrue*. In that case, the Ninth Circuit upheld the ALJ's finding that "normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances … tend to suggest that the claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis." 539 F.3d 1169, 1175 (9th Cir. 2008). Here, however, Plaintiff's activities were far below normal. She did not cook but merely assembled or reheated the simplest possible meals; she did not clean house but merely picked up after herself; she did not do laundry; and she did not help

with household finances but merely her own finances while her housing and food were provided by other people. *See* AR at 442-43 (living in halfway house then with daughter).

Conflict with Plaintiff's activities was not a clear and convincing reason to discount her testimony.

### 3. *Improvement with Treatment*

The Commissioner notes Plaintiff reported some improvement with treatment. (Dkt. # 33 at 8.) "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). However, making "some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). Treatment notes showing treatment "helped," a "decrease in anxiety," or "mood improved" do not establish sufficient improvement that Plaintiff's symptoms were eliminated or contradict Plaintiff's testimony in any other way. AR at 750, 799, 902. Improvement with treatment was not a clear and convincing reason to discount Plaintiff's testimony.

The Court concludes the ALJ erred by discounting Plaintiff's testimony without providing a clear and convincing reason.

### D. Scope of Remand

Plaintiff requests remand for an award of benefits because "[t]he record is complete, there are no outstanding issues, and if the improperly rejected opinion and testimonial evidence were credited, benefits would be merited." (Dkt. # 32 at 14.) Plaintiff is mistaken that there are no outstanding issues. The Court cannot remand for benefits if "there is a need to resolve conflicts and ambiguities…." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014). Dr. Flanagan's and Dr. Kester's opinions that Plaintiff can perform full-time work

conflict with Plaintiff's testimony that she cannot. "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id.* The Court concludes enhancement of the record would be useful and, accordingly, remand for further proceedings is appropriate.

## V.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reevaluate Plaintiff's testimony and Dr. Flanagan's and Dr. Kester's opinions, reassess the RFC as appropriate, and proceed to step five as necessary.

Dated this 21st day of December, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge